# CHARLESTON.

### PFALZGRAF v. COUNTY COURT.

Submitted February 17, 1914.    Decided March 24, 1914.

1. COUNTIES—*Limitation on Indebtedness—Validity.*
     Chap. 51 of the Acts of 1905, limiting the indebtedness of counties, cities, school districts and municipal corporations to two and one half per centum of the assessed value of the taxable property

therein, does not conflict with sec. 8 of Art. X of the Constitution and is valid. (p. 724).

2. SAME—*Limitation of Indebtedness—Constitutional Provision—Operation and Effect.*

Sec. 8 of Art. X of the Constitution does not grant to counties, cities, school districts and municipal corporations the right to incur indebtedness to the extent of five per cent. of the assessed value of the taxable property therein nor recognize such right in them as pre-existent. (p. 724).

3. SAME—*Limitation of Indebtedness.*

A county court cannot issue bonds, payable or redeemable out of taxes to be raised from persons and property of a magisterial district, in excess of two and one half per cent. of the assessed value of the taxable property in such district. (p. 726).

4. SAME—*Bonds for Road Improvement—Right to Issue—Repeal of Statute.*

Sec. 25a of chap. 38 of the Acts of 1911, authorizing the issuance of bonds for road improvement, does not impliedly repeal the limitation imposed by chap. 51 of the Acts of 1905. (p. 727).

Mandamus by Wm. Pfalzgraf to require the County Court of Wood County to order a bond election and submit to the voters a proposition to issue and sell bonds for permanent road improvement.

*Writ Refused.*

*J. W. Vandervort,* for petitioner.

*C. A. Kreps,* Prosecuting Attorney, for respondent.

POFFENBARGER, JUDGE:

The County Court of Wood County having refused compliance with the prayer of a petition of citizens of the magisterial district of Clay in said county, to order an election for the purpose and submit to the voters of said district a proposition to issue and sell bonds in the penalty of $80,000.00 for permanent road improvement, redeemable out of taxes to be levied upon and collected from the taxable property in said district, William Pfalzgraf, one of said petitioners, seeks here a peremptory writ of mandamus, commanding said county court to order such election and make such submission.

Deeming itself not bound to do a vain thing, the county court relies upon a statutory limitation as to indebted-

ness on the part of counties, cities, school districts and munic-
ipal corporations, in justification of its action in the premises.
It does not deny the right of magisterial districts to incur
indebtedness for road improvement, nor its duty, upon the
filing of a petition under proper conditions, to order an elec-
tion and submit to a popular vote thereat a proposition for
the issuance of bonds for such purpose. Nor is the sufficiency
of the petition otherwise questioned. The limitation, imposed
by chapter 51 of the acts of 1905, inhibits the incurrence of
indebtedness by any county, city, school district or municipal
corporation, subsequent to the first day of January 1906,
exceeding in the aggregate two and one half per centum of the
value of the taxable property therein, to be ascertained by
the last assessment for state and county taxes. The bond
issue proposed amounted to $80,000.00 and the court ascer-
tained from its records that the total valuation of the prop-
erty in the district, according to the last assessment thereof,
made in 1913, was $1,682,780.00 of which two and one half
percentum is slightly more than one half of $80,000.00, and
seeing the impossibility of a valid issue of bonds in the amount
named in the petition, refused to order the election.

Regarding sec. 8 of Art. X of the Constitution, limiting the
indebtedness of counties, cities, school districts and municipal
corporations to five per cent. of the taxable value of the prop-
erty therein, as a grant of the right to incur indebtedness to
that amount, the relator argues, as the basis of his applica-
tion for this writ, unconstitutionality of chapter 51 of the
Acts of 1905, reducing the limitation to two and one half per
cent. As the terms of the constitutional provision in quest-
tion are negative and prohibitory, the supposed grant of
power and authority, if any, must be an implied one.
Whether there is such a grant of power to counties, cities,
school districts and municipal corporations, or recognition
thereof as preexistent in them, so as to deny authority in the
legislature to interfere with it, is a question very similar to
the one raised in *Dillon* v. *County Court*, 60 W. Va. 339,
under sec. 7 of Art. X of the Constitution, imposing a limita-
tion upon county courts, respecting the amount of taxes they
may raise in any one year for current expenses. The princi-
ples and considerations upon which that question was resolved

in the negative in that case clearly apply here. Power in the legislature to define the purposes for which county indebtedness may be incurred and the mode or manner of its incurrence and thus to say whether there shall be such indebtedness or not constitutes a strong argument against intent on the part of the people, in the adoption of the Constitution, to recognize any right in county courts respecting indebtedness, beyond the power of the legislature to regulate or abolish. Moreover, as the power to incur indebtedness includes power of taxation to discharge it, there is a strong presumption against intent on their part to deny this power to the legislature and vest it elsewhere, it being a sovereign one. In the absence of a delegation thereof, it clearly belongs to the legislature, and the authorities uniformly require express words. for its delegation to inferior tribunals or sub-divisions of the State or its elimination from the power ordinarily possessed by the legislature. Like the statutory limitation upon the power of local taxation, upheld in *Dillon* v. *County Court*, this limitation upon the power to incur local public indebtedness is a part of the statutory system by which the basis of valuation for purposes of taxation was altered, and was, designed to prevent an enormous resultant increase of such indebtedness as was the other to prevent a resultant increase in the burden of taxation. Hence the principles and elements, involved in the two questions are very similar, if not identical. Accordingly, we are of the opinion that the statutory limitation does not conflict with the constitutional provision relied upon and is valid.

Though not suggested in argument, two inquiries arise as to· possible avenues of escape from the consequences of this conclusion: (1) whether, the limit as to county indebtedness not having been reached and the record not disclosing an excess. thereof in the amount of the proposed issue, the bonds, if· issued, would be valid notwithstanding the valuation of the property of the district is insufficient to warrant the issuance thereof, since they must be executed and sold by the county court and not by the district in its own name, agreeably to· principles declared in *Neale* v. *County Court*, 43 W. Va., 90;. and (2) whether sec. 25a of chap. 38, Acts of 1911, authorizing bond issues for road improvement, being subseqeunt and..

making no reference to the statutory limitation, impliedly repeals it to the extent of conflict thereof with the later act.

Both must be resolved in the negative. To permit county courts to issue bonds payable out of the levies of a given district to the extent of the authorized indebtedness of the county would violate the spirit of both limitations, which were obviously imposed to prevent unreasonable indebtedness upon any community or sub-division. It would allow indebtedness on a district containing one-tenth of the taxable wealth of a county to the extent of 50 per cent. of its assessed value under the constitutional limitation and 25 per cent. under the statutory one. Surely no such result could have been intended. Its injustice, oppression and absurdity would condemn such an interpretation. *Hasson* v. *Chester,* 67 W. Va., 278. The second terminates unfavorably to the relator also. The provision of the Act of 1911 involved has a special and limited purpose, and does not deal with the subject matter of chap. 51 of the Acts of 1905, limitation of public indebtedness. Therefore, its general terms must be so far restrained in their application as to confine them to the manifest legislative purpose and prevent them from encroaching or innovating upon well defined principles of public policy found in other departments of the law. *Reeves* v. *Ross,* 62 W. Va., 7.

Upon these principles and conclusions, the writ prayed for must be refused.

*Writ Refused.*