# Little Beaver Township School Directors' Election.
## Appeal of Albert McCowin and R. J. Miller.

[Marked to be reported.]

*Election law—Ballots—Inserting names—Stickers—Act of June* 10, 1893.

Under the act of June 10, 1893, P. L. 419, regulating elections, and directing that the voter " shall prepare his ballot by marking," the " marking " is applicable only to candidates whose names are printed on the official ballots.

In the case of persons " whose names are not already on the ballot," the only prescribed mode of voting, is by inserting their names in the blank spaces prepared therefor in the right hand column of the official ballot. It is the name only that is to be thus inserted, and not the title of the office to be filled.

A ballot should not be counted where the right hand column devoted to blank spaces, is covered and obliterated by a slip ticket prepared with adhesive paste, in such a manner that the titles of the offices, direction for insertion of names, and the spaces indicated and defined by lines in the official ballot are covered, and the titles of offices, directions for marking, spaces and names provided therein on the prepared slip ticket, are substituted therefor.

*Statutes—Expressio unius est exclusio alterius.*

Where power has been given by statute to do a thing in a particular way, affirmative words, marking out the way, by necessary implication prohibit all other ways.

Argued Oct. 10, 1894. Appeal, No. 288, Oct. T., 1894, by Albert McCowin and R. J. Miller, from order of Q. S. Lawrence Co., March T., 1894, No. 39, on petition contesting election. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Petition contesting election. Before HAZEN, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree, quoting it.

*J. Norman Martin*, *Charles E. Mehard* with him, for appellant.—Statutory provisions for marking ballots and inserting names are merely directory. If the intention of the voter can be ascertained from an examination of the ballot the vote must be counted: Woodward v. Sarsons, L. R. 10 C. P. 733; act of June 10, 1893, § 27.

There is nothing in the act of 1893 forbidding the use of such slips. The voter "may" insert a name in the blank space. If he does it shall count as a vote without a cross mark. Clearly it will count as a vote should he also see proper to make a cross mark.

*Malcolm McConnell*, for appellees.—The spirit of the constitution requires that each voter shall be permitted to cast a free and unintimidated ballot: DeWalt v. Bartley, 146 Pa. 529.

The tickets used in the election were prepared in likeness of the official ballot, by persons having no responsibility under the statute, furnished outside of the voting room by contending parties, affixed to the official ballot so that the ballots to which they are affixed are readily distinguished from others, and thus the provisions of the statute for secrecy, uniformity, legal nomination of candidates, free posting, and publication of candidates' names, and the freedom of the voter from electioneering and solicitation, are made of no effect.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 7, 1895:

The controlling question in this case is whether, upon the undisputed facts, the votes in controversy which were counted by the election officers for the appellants Albert McCowin and R. J. Miller, respectively, for the office of school director, etc., should not have been rejected, for the reason that they were not cast according to the provisions of the act of June 10, 1893, entitled "An Act to regulate the nomination and election of public officers," etc., P. L. 419.

The court found that, "at the general election held in Little Beaver Township on February 20, 1894, it was required that two persons be elected to the office of school director in said township. Ballots, of which a sample is attached to the peti-

tion, containing the list of offices and names of all persons duly
nominated for this and other offices, were provided by the
county commissioners, furnished to the election officers and by
them to the voters as required by law. Many of the electors
procured at other places printed slips or tickets of the form
shown in the second specification of the petition, including a
list of township officers to be voted for, with directions to mark
names of candidates for the respective offices, prepared with
adhesive paste on the reverse side, and of the size and form the
same as should have appeared on the official ballot, if the per-
sons named had been duly nominated for the respective offices.
They affixed said slip-tickets upon the right hand column of
the official ballot which was devoted to blank spaces, and,
when so affixed, the titles of the offices, directions for insertion
of names and the spaces indicated and defined by lines, pro-
vided in the official ballot for township officers, were covered
and obliterated, and the titles of officers, directions for marking,
spaces and names provided therein on the prepared slip-ticket,
substituted therefor. Cross marks were also made in the
squares opposite certain names, to the right of the names. The
election officers counted, as votes for the respective persons,
the names on said slips having the cross marked opposite their
names. Seventy-six (76) ballots so cast were counted for Al-
bert McCowin, and seventy-five (75) ballots so cast were
counted for R. J. Miller. The return of the election officers
then showed that for the office of school director, A. G. Mc-
Ginnis had fifty-four (54) votes; John M. Scott twenty-five
(25) votes; M. L. Andrews thirteen (13) votes; W. A. Ken-
ney sixty-two (62) votes; Albert McCowin ninety (90) votes;
R. J. Miller eighty (80) votes; J. Q. Adams one (1) vote."

Certificates of election were accordingly issued to appellants;
but the court below, holding that the seventy-six and seventy-
five ballots counted as aforesaid for them respectively were
illegally cast, adjudged and determined that W. A. Kenney and
A. G. McGinnis, having received a majority of all the lawful
votes cast at said election for the office of school director, etc.,
were duly elected to said office.

The question presented for our consideration is whether the
learned judge erred in construing the act of 1893 and ruling as
he did against appellants.

The first section of the act declares: "That all ballots cast in elections for public officers within this commonwealth shall be printed and distributed at the public expense " etc., as thereinafter provided; and section 27 declares: "None but ballots provided in accordance with the provisions of this act shall be counted."

After specifically directing the manner in which the names of the candidates of each political party shall be arranged on the official ballot, etc., section 14 declares: "There shall be left at the right of the groups of candidates for presidential electors, and of the list of candidates for other offices (or under the title of the office itself for which an election is to be held in case there be no candidates legally nominated therefor), as many blank spaces as there are persons to be voted for, by each voter, for such office, in which spaces the voter may insert the name of any person whose name is not printed on the ballot as a candidate for such office, and such insertion shall count as a vote without the cross mark hereinafter mentioned."

The act also provides for delivery of one official ballot, by the proper election officer, to each qualified voter as soon as he is admitted within the rail; and the next or 22d section provides that, on receipt thereof, " the voter . . . . shall prepare his ballot by marking . . . . or by inserting in the blank spaces prepared therefor any name not already on the ballot," etc.

The " marking " mentioned in the last quotation is applicable only to candidates whose names are printed on the official ballot. They cannot be legally voted for in any other way than by marking as specified in said section.

In the case of substituted nomination, filed with or transmitted to the county commissioners after the ballots have been printed, said commissioners are required by the 12th section to " prepare and distribute with the ballots suitable slips of paper bearing the substituted name, together with the title of the office, and having adhesive paste upon the reverse side, which shall be offered to each voter with the regular ballot and may be affixed thereto."

The only prescribed mode of voting for persons, " whose names are not already on the ballot," is " by inserting (their names) in the blank spaces prepared therefor " in the right hand column of the official ballot. It is the " name " only

that is to be thus inserted, not the title of the office to be filled, etc. The latter is already printed there and constitutes part of the ballot prepared for the use of voters. The name or names, as the case may be, cannot be inserted anywhere in said right hand column, but only in the appropriate blank spaces prepared therefor. The voter is not authorized to insert anything in any part of said column, save and except in the blank spaces prepared for names not already on the ballot.

The manner of inserting is not prescribed. It may therefore be done in any appropriate way, such as by writing, stamping with metallic or rubber stamp, or by covering the proper blank space, in whole or in part, with a slip ticket or sticker, securely attached to said space by adhesive paste or other suitable material, on which ticket or sticker is printed or written a name or names "not already on the ballot."

Everything necessary or proper to be done by the voter in order to record the free and unconstrained expression of his choice of persons to fill the respective offices, is thus provided for ; and the manner in which said right of choice shall be exercised is specifically pointed out. If he desires to vote for any of those whose names are printed on the official ballot, he must do so by " marking," as directed by the act. If he wishes to vote for persons whose names are not already on the ballot he can do so by " inserting " their names in the blank spaces prepared therefor ; but he has no right to insert anything else in said blank spaces or in any other part of the right hand column.

In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden. Expressio unius, est exclusio alterius. The ordinary rule, as has been stated by recognized authority, is that where power has been given to do a thing in a particular way, then affirmative words, marking out the way, by necessary implication prohibit all other ways. To hold, as we are virtually asked to do by appellants, that by virtue of the authority given the voter to insert, in the blank spaces provided therefor, names not already on the official ballot, he may so use a previously prepared slip-ticket, given to him by an outside party, as to entirely cover the right hand column of the official ballot, and thus effectually obliterate or conceal everything printed thereon,

would not be construction, but judicial legislation of the worst type.  Moreover, the use of such a blanket ticket or sticker would tend to defeat the main purposes of the act.

The right hand column is part of the official ballot.  In addition to the requisite number of blank spaces for the insertion of names not already on the ballot, the respective titles of the different offices to be filled and instructions as to the number of names that may be inserted underneath said titles respectively, are intended as guides not only for the voter but also for the election officers.  To permit the voter to procure, from outside parties, a slip-ticket or sticker, corresponding in size with said column, and paste the same over the printed matter, as well as the blank spaces thereon, would be contrary to the letter as well as the spirit of the act.  But, it is enough for us to know that no authority can be found in the act for doing any such thing.

We have no doubt as to the correctness of the conclusion reached by the court below, and hence the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellants.