STATE *ex rel.* EDWARD LOCKHART, SR., *et al.*

*v.*

L. E. ROGERS, *Mayor, etc., et al.*

(No. 10283)

Submitted May 25, 1950. Decided May 29, 1950.

HAYMOND and FOX, JUDGES, dissenting.

*Hall & Zachary,* for plaintiffs.

*Allen & Henderson* and *F. D. B. Harding,* for defendants.

LOVINS, PRESIDENT:

This original proceeding in mandamus brought by Edward Lockhart, Sr., Morton M. Lipman, Joe A. Marino, Fitzhugh Smith, Henry J. Capehart, Jr., and Hal B. Belcher, petitioners, against L. E. Rogers, mayor of the City of Welch, Meyer Bell, Howard Sly, Jess Mullins, Joseph G. Travis and W. B. Swope, members of the council of that city, Hobart E. Payne, city clerk, and the City of Welch, a municipal corporation, is for the purpose of compelling the defendants to place the names of the petitioners on the official ballot to be used in voting at the municipal election held in the City of Welch on June 6, 1950, and to compel defendants to appoint certain persons recommended as commissioners and poll clerks to represent the Democratic party in conducting such election.

Petitioners allege that Lockhart was legally nominated for the office of mayor of said city; and that the other petitioners were nominated for the office of members of the council thereof, to be voted for at the municipal election above mentioned. They further allege that such nominations were authorized by Chapter 40, Acts of the Legislature, 1941, and Code, 3-4-30.

It is also alleged that certain legally qualified persons were duly recommended for appointment as commissioners of election and poll clerks representing the Democratic party to conduct such municipal election.

Defendants contend that Section 25 of Chapter 3, Acts of the Legislature, Regular Session, 1929, Municipal Charters (the charter of the City of Welch), prescribes the only method for nominating persons to be voted for as municipal officers; that at the time election officers were to be appointed for holding said election the Democratic party did not recommend or request the appointment of any persons to represent it at such election; and that the council of the City of Welch "of its own volition" appointed Democrats as such commissioners of election and poll clerks; and that the petitioners Belcher, Smith and Capehart are not eligible to the offices of councilmen of the City of Welch because they have not been assessed with nor paid taxes upon personal or real property, or both, of the value of five hundred dollars for the year 1949.

No evidence was adduced. The petition and answer disclose the following: The special charter of the City of Welch, Chapter 3, Section 28, provides that the first election under such charter should be held on the first Tuesday in June, 1930, and every two years thereafter on the first Tuesday in June. In the years 1934, 1936, 1938 and 1940, conventions were held by the Democratic party, and nominations for municipal officers were made in accordance with Section 25 of the charter of the city. An executive committee was selected by the convention of 1940, and a chairman of such committee was elected. No conventions were held, no nominations were made in the years 1942, 1944, 1946, 1948, and 1950, and it would seem that the Democratic party in so far as participating in municipal elections had disintegrated; although in 1942 recommendations were made by the chairman for the appointment of commissioners of election and poll clerks to conduct the election in that year. The chairman elected in the year 1940 has not resided in Welch since 1942, he having entered the military service of the United States in that year and upon his return from that service, he established his domicile elsewhere. All the members of the Democratic executive committee selected by the convention of 1940 are registered voters of Welch, but only five

members of said committee actually reside in that city. The chairman elected in 1940 was the last chairman, and has since that time attempted to resign, but could find no person or persons in authority to accept his resignation.

Defendants allege that they have selected the persons to represent the Democratic party as officers of the elections held in 1944, 1946, and 1948.

Prior to May, 1950, a person adhering to the Democratic party published an article in a Welch newspaper stating that he, along with other persons, was interested in placing on the ballot nominees for municipal offices as representing the Democratic party.

Petitioners assert that they were nominated by certificate, as authorized by Chapter 40, Acts of the Legislature, 1941, and Code, 3-4-30, and have complied with all the provisions of such statutes. It is alleged that the voters signing the certificate are approximately thirty per cent of the total vote cast at the last preceding municipal election; that the petitioners are legally qualified to hold the office for which they are nominated; that the subscribers to said certificate are legally and duly registered voters in the City of Welch; that such subscribers desire to vote for such candidates; and that they were aware that upon signing the certificate they could not vote at any primary election next ensuing in the City of Welch.

It is further disclosed that at an allegedly "proper time" a person representing the Democratic party was present at a meeting of the council to present the names of the persons recommended as commissioners and poll clerks; and that such person was advised that the municipal council would not consider the appointment of election officers at that time. At a later meeting the council refused to consider the appointment of the persons so recommended. Although the allegation with reference to the recommendation of persons to be appointed election officers is denied, we think that fact is well pleaded in the petition, and a demurrer having been interposed to the petition by the defendant, we treat the allegation of the petition as true.

It appears from a certified copy of entries on the land books and personal property books of the City of Welch, Brown's Creek District and McDowell County that no property, real or personal, is assessed to petitioners Belcher and Capehart for the year 1949, and that property of the value of four hundred dollars was assessed against the petitioner, Fitzhugh Smith, located in Brown's Creek District.

On May 29, 1950, this Court entered an order awarding a writ of mandamus requiring defendants to place the names of the petitioners on the official ballot to be used at the regular municipal election, held in said city on June 6, 1950, and requiring defendants to appoint as election commissioners and poll clerks the persons designated as representing the Democratic party to represent said party at such election; but the Court did not pass on the eligibility of petitioners, Belcher, Capehart and Smith.

The first question presented is controlling: Are petitioners entitled to have their names placed upon the official ballot used in the municipal election above mentioned?

The right to vote and the conduct of elections are created by the Constitution and statutes of this State. 18 Am. Jur., Elections, Section 2.

"At the outset of any election case, the primary consideration is that no voter should knowingly be disfranchised." *State v. Langford,* 122 W. Va. 398, 400, 9 S. E. 865. Mindful of the foregoing, we advert to the provisions of the charter of the City of Welch. "Between the first and fifteenth days of May preceding the municipal election for the purpose of electing city officers each political party shall at some convenient place, to be designated by the chairman of the city committee thereof, hold a convention for the purpose of nominating a mayor, councilman from each ward and two councilmen at large. Each of the political parties having the right to make nominations for city officials under the election laws of the City of Welch and State of West Virginia shall give notice

of the time and manner of such nominations by publication thereof in some daily newspapers printed in the City of Welch for ten days prior to the date of such convention." Section 25, Chapter 3, Municipal Charters, Acts of the Legislature, 1929.

The pertinent part of Section 28 of Chapter 3, *id.*, (charter of the City of Welch) reads as follows: "In all elections by the people, the mode of voting shall be by ballot * * *. The election in said city shall be held and conducted, and the result thereof certified, returned and officially determined under the laws in force in this state relative to general elections, except that the persons conducting said election shall, * * * in all respects comply with the requirements of the laws of the state relating to elections in force at that time. * * * And the provisions of the election laws of the State of West Virginia in effect on the date of said election, concerning elections by the people shall govern such elections and be applicable thereto, * * *."

The pertinent provisions of the statute upon which petitioners rely read as follows: "Groups of citizens having no party organization may nominate candidates for public office otherwise than by conventions or primary elections. In such case the candidate or candidates, jointly or severally, shall file a declaration containing the name of the political party he or they propose to represent, its platform, principles or purposes, * * * with the clerk of the circuit court of the county if the office is to be filled by the voters of one county or political subdivision thereof." Chapter 40, Acts of the Legislature, 1941.

No question is raised relative to the compliance by the petitioners with all provisions of Chapter 40, *id.* But defendants contend that Chapter 40, *id.*, is not applicable to nominations made for the office of mayor and councilman of the City of Welch. They rely on the holding of this Court in the case of *Bannister* v. *Glasgow,* 117 W. Va. 172, 185 S. E. 2. In the *Bannister* case, this Court dealt with the applicability of Code, 8-3-15, relative to holding pri-

mary elections. No mention is made of a nomination for a municipal office by certificate. The case of *State* v. *Pride,* 132 W. Va. 801, 54 S. E. 2d 31, is authority for the proposition that statutes with reference to holding general elections in the State and counties may be made applicable to the holding of municipal elections by the provisions of a special charter. In the *Pride* case the question of whether a new party could be placed on the ballot was raised. Party representation is not limited to a political party established and maintained for general purposes; for municipal elections held under a special charter the members of existing parties may become members of a new party. *Peyton* v. *Holley,* 72 W. Va. 540, 78 S. E. 666. "Voters may belong to one political organization for national and state purposes and another for municipal purposes." *Carter* v. *Stowers,* 72 W. Va. 662, 78 S. E. 974.

The provisions of Section 28 of the charter of the City of Welch should be read and applied along with the provisions of Chapter 40, Acts of the Legislature, 1941, and when so applied there is statutory authority for nomination of municipal officers of the City of Welch by certificate. "That which is plainly within the spirit, meaning and purpose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed." *Hasson* v. *City of Chester,* 67 W. Va. 278, 67 S. E. 731. See *Ex parte M. T. Dickey,* 76 W. Va. 576, 582, 85 S. E. 781; *Carlton* v. *Herndon,* 81 W. Va. 219, 221, 94 S. E. 131; *Ex parte James Watson,* 82 W. Va. 201, 205, 96 S. E. 648.

To give Section 25 of the charter of the City of Welch the application contended for by defendants would work a manifest injustice and would tend to prevent a substantial portion of the citizens of Welch from actually exercising their right of suffrage, and untrammeled selection of their city officials. It is to be presumed that no such result was intended by the Legislature. *Hasson* v. *City of Chester, supra.* See *Pfalzgraf* v. *County Court,* 73 W. Va. 723, 727, 81 S. E. 397; *Harrison* v. *Harmon,* 76 W. Va. 412, 419, 85 S. E. 646. We therefore conclude that applying the provisions of the special charter of the City of Welch,

hereinabove adverted to, the provisions of Chapter 40, Acts of the Legislature, 1941, and Code, 3-4-30, to the facts herein the petitioners had a clear legal right to have their names placed upon the official ballot used at the election held in the City of Welch on June 6, 1950. This conclusion is consonant with the salutary rule stated at the commencement of this discussion. We are of opinion that a liberal application of any statute should be made so as to afford the citizens of this State or any political subdivision thereof an opportunity to vote for persons of their choice.

We find no specific reference to the right of the petitioners and the party they represent to designate persons for appointment as commissioners of election and poll clerks. Chapter 59, Article 5, Section 9, Acts of the Legislature, 1945, Regular Session, makes provision for appointment of election officers upon recommendation of the county executive committees of the two political parties which at the last preceding election cast the highest and the second highest number of votes. In the instant case no votes were cast for the Democratic party at the election held in 1948. But the case of *Hasson* v. *City of Chester, supra,* is authority for the proposition that the two leading parties are entitled to representation and may demand "the appointment of qualified persons designated by them." Judge Poffenbarger in the body of the opinion in the *Hasson* case used the following language: "By this provision it is impliedly given, and, being given, it is not limited or restricted. Given in general elections and not denied in municipal elections, given, when there are leading parties as shown by preceding elections, and not denied, when there are leading parties, but not shown to be such by the preceding election, it must be assumed the legislature intended it for all elections. The plain purpose of the statute is to give representation to the leading parties in the interest of fairness and honesty in elections."

The pertinent provisions of the charter of the City of Welch and Chapter 59, *id.,* relative to the appointment of commissioners and poll clerks, should be construed in *pari materia.* Applying the principle laid down in the

*Hasson* case, even though the Democratic party was not represented as one of the leading parties in the preceding general election held in the City of Welch, it is clear that such party was entitled to representation in the appointment of election officials.

We express no opinion as to the eligibility of petitioners, Belcher, Smith and Capehart. But see *State ex rel. Thompson* v. *McCallister,* 38 W. Va. 485, 18 S. E. 770; *Kahle* v. *Peters, Mayor,* 64 W. Va. 400, 62 S. E. 691; *McMillen* v. *Neeley,* 66 W. Va. 496, 66 S. E. 635; and annotation 88 A. L. R. 812.

We note that in this proceeding the council of the City of Welch occupies a position similar to that of a board of ballot commissioners under the general laws pertaining to State and county elections. As to the power of such board, see *McKnight* v. *Ballot Commissioners,* 86 W. Va. 496, 103 S. E. 399.

For the above reasons a writ of mandamus is awarded, as provided in the order of this Court entered May 29, 1950.

*Writ awarded.*

HAYMOND, JUDGE, dissenting:

I can not agree to the decision in this proceeding which awarded a writ of mandamus to compel the defendants to place the names of the petitioners on the official ballot used at the regular municipal election held in the City of Welch on June 6, 1950, and to appoint certain designated persons as election officials to represent the Democratic party at that election. As I am thoroughly convinced that the writ should have been refused, I record my emphatic dissent.

I accept as substantially correct the legal pronouncements in these quoted statements in the majority opinion: "The right to vote and the conduct of elections are created by the Constitution and statutes of this State"; and " 'At the outset of any election case, the primary consideration is that no voter should knowingly be disfranchised.' "

The principles embodied in these expressions, however, should be supplemented by the equally important legal principles that the right to vote secured to the citizen by the Constitution must be exercised in the manner and subject to the regulations prescribed by the Legislature and that the conduct of elections is regulated by the Constitution and valid legislative enactments. The principles last stated have been ignored in the decision reached by the majority. Had they been recognized and properly applied to the facts of this case the necessary and correct conclusion would have been the denial of the writ.

The majority bases its decision upon the unsound premise that Chapter 40, Article 4, Acts of the Legislature, Regular Session, 1941, (incorporated in Michie's 1949 Annotated Code as 3-4-29), Code, 1931, 3-4-30, and Section 28, Chapter 3, Acts of the Legislature, 1929, Municipal Charters, apply to and authorize the nomination of candidates for municipal office by certificate instead of by convention, as expressly provided by Section 25 of Chapter 3, Acts of 1929, Municipal Charters, and which last mentioned statute is the charter of the City of Welch. To bolster the conclusion reached, this bald and legally unsupported statement is set forth in the majority opinion: "To give Section 25 of the charter of the City of Welch the application contended for by defendants would work a manifest injustice and would tend to prevent a substantial portion of the citizens of Welch from actually exercising their right of suffrage, and untrammeled selection of their city officials." In view of the express provisions of Section 25, which specify and prescribe a simple and familiar method whereby the members of the Democratic and the Republican parties may select their candidates for municipal offices, the statement just quoted is not only completely at variance with the real factual situation but is surprisingly inapt and utterly foreign to any material issue involved in this proceeding. The reasoning to support the quoted passage in the majority opinion would, in principle, ignore a valid statute imposing a tax and excuse a delinquent taxpayer for his failure to pay it.

The provisions of Chapter 40, Article 4, Acts of the Legislature, 1941, Regular Session (Michie's 1949 Annotated Code, 3-4-29), do not apply to the facts of this case as disclosed by the pleadings. That statute, which deals with nominations of candidates for public office by certificate, as distinguished from a primary or a convention, contains no general reference whatsover to a municipality. This is admitted by the statement in the majority opinion that "No mention is made of a nomination for a municipal office by certificate." The only specific political units which the statute designates are the county and the magisterial district. Though it makes mention of a political subdivision of a county, it is evident, from the provisions of the section as a whole, including the specified form of certificate, that the words "political subdivision", as used in the statute, mean a magisterial district and do not relate to a municipality. *Expressio unius exclusio alterius.* Even if the section is read in *pari materia* with Section 28 of the charter of the City of Welch, it is extremely doubtful if it is applicable to a nomination for a municipal office.

If the Legislature had intended Chapter 40, Article 4, Acts of 1941, Regular Session, to apply to municipalities it could, and doubtless would, have made the application of the statute to such nominations clear by apt language. Only by a strained and utterly unwarranted construction, and not by any justified liberal construction, of the statute relating to nominations for public office can it be made applicable to nominations for municipal office. The tortuous construction now placed upon Chapter 40, Article 4, Acts of the Legislature, 1941, Regular Session, when read in connection with Section 28 of the charter of the City of Welch, however, can not extend the scope of the general statute to the purported nominations of the petitioners. The statute applies only to "groups of citizens having no party organization". The record discloses, without the shadow of a doubt, that the Democratic party organization, to which the petitioners and the signers of their certificates of nomination unquestionably belong, though

inactive in municipal elections in Welch since 1942, has not ceased to exist. It can not be said with any degree of reason that the Democratic party in the City of Welch has "no party organization". The record shows that, though the chairman of the Democratic city executive committee has ceased to reside in Welch and a vacancy occurs in that position, five members of the committee reside in the city and continue to hold their positions in the party organization. The existence of a vacancy in one or more positions in the city organization of the Democratic party in Welch does not abolish or destroy the party organization. The existence of the Democratic party organization is indicated by the allegation in the petition in this proceeding that the appointment of election officials to serve and represent the Democratic party at the municipal election in June was recommended by the representative of that party and is recognized by the statement in the majority opinion that "even though the Democratic party was not represented as one of the leading parties in the preceding general election held in the City of Welch *it is clear that such party was entitled to representation in the appointment of election officials.*" (Emphasis supplied). How, may I ask, can the Democratic party be represented in the appointment and by the service of election officials in its behalf if it has ceased to exist as a party organization in the City of Welch? The undisputed facts show that the petitioners are members of the Democratic party in the City of Welch and that they and the signers of the certificates of nomination are not a group of "citizens having no party organization" within the meaning of the statute upon which the majority bases its decision. No sufficient reason or excuse is presented to justify the failure of the existing Democratic party organization to fill the vacancy in the position of chairman of the municipal executive committee or to call a convention, as provided by Section 25 of the charter of the City of Welch, to nominate its candidates for the municipal offices voted for and filled at the city election on June 6, 1950.

In view of the foregoing recital of the real factual situation involved in this proceeding, it is evident that the

failure or the unwillingness of the Democratic party organization, and the indifference of its members to the inaction of those comprising that party organization, to take advantage of the simple and well known means expressly provided by Section 25 of the charter of the City of Welch to nominate its candidates for municipal offices by a party convention in which every member is entitled to participate, voice his views, and vote his sentiments in the selection of its candidates, not the provisions of Section 25, have produced the "manifest injustice" and the prevention of "a substantial portion of the citizens of Welch from actually exercising their right of suffrage and untrammeled selection of their city officials", if the result visualized and deplored in the majority opinion has or may come to pass. In a situation of the character just described this Court should not be called upon to act in the place of representatives of, a political party who, for reasons of their own, have failed or refused to act, and, if so called upon, should summarily refuse to perform or require the performance of the functions of any party organization and should decline to create, by labored effort and unsound reasoning, an alternative which excuses and rewards the inaction of any such organization.

The statute which applies to and should control the decision in this case is Section 25 of the charter of the City of Welch, Chapter 3, Acts of the Legislature, 1929, Municipal Charters, which relates to the nominations of candidates of political parties for the municipal offices of mayor and councilman and expressly provides that between the first and the fifteenth day of May preceding a municipal election each political party shall hold a convention for the purpose of nominating a mayor and councilmen. The statute authorizes each political party to make nominations for these offices and specifies the method by which such nominations shall be made. As the statute creates the right to nominate the designated officers and provides the method to be pursued in exercising that right, it is a mandatory statute. Mandatory statutes are imperative and must be strictly pursued; and when

a statute specifies the manner in which an act is to be done the command of the statute must be strictly followed and complied with. *Hallanan* v. *Hager,* 102 W. Va. 689, 136 S. E. 263; *Morris* v. *Board of Canvassers of City of Charleston,* 49 W. Va. 251, 38 S. E. 500; *Mears* v. *Dexter,* 86 Va. 828, 11 S. E. 538. In the *Morris* case the opinion of this Court, prepared by Judge Brannon, contains several pertinent quotations. One of them, written by Justice Thompson of the Supreme Court of the United States in the circuit court case of *The United States* v. *One Case of Hair Pencils,* 1 Paine 400, 406, is in these words: "Affirmatives in statutes that introduce new laws, imply a negative of all that is not in the purview. So that a law directing a thing to be done in a certain manner, implies that it shall not be in any other manner." Another, by Chancellor Kent, is in this form: "And where a statute limits a thing to be done in a particular form, it includes in itself a negative, viz.: that it shall not be done otherwise." 1 Kent, Comm. 14th ed. 467, note. A third, contained in the opinion of the Supreme Court of Pennsylvania in the case of *Little Beaver Township School Directors Election,* 165 Pa. 233, 237, 30 A. 955, 27 L. R. A. 234, is couched in this language: "The ordinary rule, as has been stated by recognized authority, is that where power has been given to do a thing in a particular way, then affirmative words, marking out the way, by necessary implication prohibit all other ways." Failure to comply with a provision of a mandatory statute nullifies the privilege which the statute confers. 50 Am. Jur., Statutes, Section 20. "As in the case of statutory provisions generally, so in the case of statutory remedies and methods of procedure, the courts frequently refer to the necessity of compliance with, or conformity to, the provisions of the statute, in every essential particular thereof. Indeed, in the latter situation, the rule of strict compliance is ordinarily regarded as particularly applicable. This is especially true with regard to a statute setting up a novel, extraordinary, or summary proceeding which is in invitum, or which is radically different from that of the common law, or is in derogation of a common right. * * *.

In the absence of such compliance, the proceedings are regarded as void and subject to collateral attack." 50 Am. Jur., Statutes, Section 22. "It is an established principle, that if a statute creating a new right or cause of action where none existed before, also provides an adequate remedy for the enforcement of the right created, and the statutory remedy is not by its terms cumulative, the remedy thus prescribed is exclusive. In such case, such remedy must be pursued in the enforcement of the right to the exclusion of any other remedy." 50 Am. Jur., Statutes, Section 596.

Under the authorities cited or quoted from in the preceding paragraph of this dissent, it is perfectly obvious to me that the only way in which candidates of the Democratic party for the offices of mayor and councilman in the City of Welch can be legally nominated is by a convention of that political party as expressly provided by Section 25 of the charter of that city, and that, for that reason, the attempted nominations of the petitioners by certificates are null and void and of no valid force or effect.

The writ should have been refused in this case for an additional reason. By the conflicting allegations of their petition to the effect that the Democratic party organization in the City of Welch does not exist and that the proper representative of that party has recommended the appointment of election officers to represent it at the June election, the petitioners have assumed inconsistent positions in this proceeding. Manifestly the Democratic party organization can not be non-existent for one purpose and, at the same time, exist and function for another related purpose in connection with participation in the conduct of a municipal election. Litigants may not assume successive inconsistent positions in the course of a suit or series of suits with reference to the same facts or state of facts. *Hinerman* v. *Marshall County Bank,* 134 W. Va. 533, 60 S. E. 2d 217; *Calhoun County Bank* v. *Ellison,* 133 W. Va. 9, 54 S. E. 2d 182; *Greenbrier Laundry Company* v. *Fidelity and Casualty Company of New York,* 116 W. Va. 88, 176 S. E. 631; *Central Trust Company* v. *Cook,* 111 W.

Va. 637, 163 S. E. 60; *Ealy* v. *Shelter Ice Cream Company,* 110 W. Va. 502, 158 S. E. 781; *Clay County Bank* v. *Wilson,* 109 W. Va. 684, 158 S. E. 517; *MacDonald* v. *Long,* 100 W. Va. 551, 131 S. E. 252.

For the reasons stated, and under the authorities cited and discussed in this dissent, I would deny the writ of mandamus prayed for by the petitioners.

I am authorized to state that Judge Fox concurs in the views expressed in this dissent.